FILED
NOV 14 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **19 CR 865** |
| | ) | |
| v. | ) | |
| | ) | Violation: Title 18, United States |
| KATHRYN CHOI and | ) | Code, Section 371 |
| OLIVER HAN | ) | **Information** |
| | ) | |
| | ) | **JUDGE THARP** |

The UNITED STATES charges that:    **MAGISTRATE JUDGE GILBERT**

**(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 371)**

Introductory Allegations

1. At all times material to this Information:

    a. Outcome Health, Inc., also known as ContextMedia, Inc. ("Outcome") was a privately-held advertising company with headquarters located in Chicago, Illinois., Outcome placed television screens, tablets and wallboards that displayed educational content into doctors' offices and then sold advertising space on those devices to pharmaceutical ("pharma") companies and other clients.

    b. Defendant KATHRYN CHOI was a senior analyst in the growth strategy group who worked at Outcome from approximately October 2014 until the company placed her on leave in October 2017.

    c. Defendant OLIVER HAN was an analyst in the growth strategy group who worked at Outcome from approximately November 2014 until the company placed him on leave in October 2017.

1

d. Until about mid-2017, CHOI and HAN reported directly to Ashik Desai, Outcome's Executive Vice President of Sales and Analytics.

e. During contract negotiations, a client, such as a pharma company, or the media agency negotiating on its behalf, typically sent Outcome a list of specific doctors that the client wanted to target with its proposed advertising campaign. The targeted doctors typically were high-prescribing doctors in the medical specialties likely to prescribe the clients' respective drugs. Outcome responded by confirming the number of targeted doctors who were actually within its network. This was referred to as the "list-match" process.

f. Both CHOI and HAN conducted list matches as analysts at Outcome.

### The Conspiracy

2. From in or about December 2014, through in or about October 2017, in a continuing course of conduct, in the Northern District of Illinois and elsewhere, the defendants, KATHRYN CHOI and OLIVER HAN, knowingly combined, conspired, confederated, and agreed with each other and others known and unknown, to commit an offense against the United States, namely, wire fraud, that is, to knowingly and with intent to defraud devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmit and cause certain wire communications to be transmitted in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Proceeding:

## Purpose of the Conspiracy

3. The purpose of the conspiracy was to defraud the clients of Outcome, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## Ways, Manners, and Means

4. At Ashik Desai's direction, CHOI and HAN inflated the amount of inventory that Outcome had in responses sent back to the clients through the list-match process. In some instances, CHOI and HAN misrepresented solely the total available inventory that supposedly had matched against the clients' lists. In other instances, CHOI and HAN responded with fabricated lists of specific offices, identified by addresses, that had supposedly matched against the clients' lists. And, in still other instances, CHOI misrepresented the number of high priority—or higher "decile"—offices that matched. The purpose of these inflated list matches was to induce the clients to sign contracts with Outcome that were keyed to the misrepresented inventory number and type. CHOI and HAN typically concealed from client-facing salespeople that the list match results were inflated so the salespeople would not have concerns about presenting the misrepresentations to the clients.

5. When Outcome failed to acquire the inventory that they had sold to the clients, CHOI and HAN helped conceal the resulting under-delivery from the clients, who were still being invoiced for the full amounts in the contracts. CHOI and HAN also fabricated location lists delivered to Outcome's pharma clients. These lists

3

supposedly identified the specific offices where the client's campaign was then running, and were provided either as part of monthly proofs-of-performance, or in response to specific requests that the clients made for purposes of conducting research on the advertising campaigns' effectiveness.

6. CHOI helped Outcome track the magnitude of the under-delivery by creating "delta" reports, which showed the difference between the contracted number of offices/devices and the true number of devices where the advertisements were actually playing.

7. CHOI and HAN further concealed the under-delivery by misleading Outcome's outside financial statement auditors ("Auditor A"). When Auditor A audited Outcome's financial statements for years 2015 and 2016, it requested specific proof that Outcome had met its obligations under the contracts with pharma clients. At Ashik Desai's direction, CHOI and HAN fabricated location lists to give to the auditors at Auditor A, to conceal the extent of the under-delivery and to make it appear that Outcome had satisfied its obligations.

8. CHOI and HAN also deceived clients by sending them inflated patient engagement metrics regarding how frequently patients interacted with Outcome's tablets. CHOI and HAN knew that Ashik Desai and another individual had heavily inflated the tablet metric numbers. When one client noticed discrepancies associated with Outcome's tablet metric numbers, CHOI and others provided false explanations for the discrepancies, concealing that Outcome had inflated the numbers.

4

9.      The amount of loss to the pharma clients during 2015 and 2016 due to CHOI and HAN's conduct and that of their co-conspirators was over $25 million but less than $65 million.

## Overt Acts

10.     In furtherance of the conspiracy and to effect and accomplish the objects thereof, CHOI, HAN and their coconspirators committed overt acts in the Northern District of Illinois and elsewhere, including, but not limited to, the following:

a.      On or about September 10, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, HAN, in furtherance of the conspiracy and for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by wire communication through an Outcome email account, certain writings, signs and signals, namely, an e-mail to Ashik Desai and CHOI in which HAN wrote, "I'll go ahead and share the 300 Rheum site addresses we discussed," which referred to sharing with a pharma client a false list of offices where the client's advertising campaign was playing, when in fact, as HAN then well knew, the campaign was playing in only 129 locations at the time.

b.      On or about February 26, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere, CHOI, in furtherance of the conspiracy and for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce by wire communication through an Outcome email account, certain writings, signs and signals, namely, an e-mail to Ashik Desai concerning a request for data from Auditor A in which she wrote, "Know some programs may have

5

been at 50% so we'd probably need to backfill those," which referred to fabricating lists of where devices had been playing advertising campaigns to mislead Auditor A into believing that Outcome had met its contractual obligations to its clients.

All in violation of Title 18, United States Code, Section 371.

*Brian Hayes by MFM*
BRIAN HAYES
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515
Northern District of Illinois


ROBERT ZINK
Chief, Fraud Section

By: *Will Johnston*
William E. Johnston
Assistant Chief
Kyle C. Hankey
Trial Attorney
Criminal Division, Fraud Section